**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 01-41327 through 01-41335
No. 01-41366 (Consolidated)
No. 01-11481 (Consolidated)
No. 01-51209 (Consolidated)
No. 01-51241 (Consolidated)

BILLY ARNOLD, JR., ET AL.,

Plaintiffs - Appellees,

VERSUS

GARLOCK, INC.,

Defendant - Appellant.

Appeals from the United States District Court
for the Southern District of Texas, Corpus Christi

December 28, 2001

Before DeMOSS, PARKER and DENNIS, Circuit Judges
ROBERT M. PARKER, Circuit Judge:

Before us are 37 nearly identical motions by the Appellant, Garlock, Inc. ("Garlock"), to stay the proceedings of various district courts throughout the four federal districts in Texas pending Garlock's intended appeal. Having reviewed the various motions, which we treat as a single motion, the appellees'

1

responses and the amici[1] briefs filed in the case, we deny Garlock's motion.

## I. Background.

The cases before us were all originally brought as personal injury tort or wrongful death ("PITWD") claims by various plaintiffs against a group of co-defendants which is, by and large, similar in each case. The plaintiffs' claims arise from exposure to asbestos in one manner or another. The result of this exposure has allegedly led to a plaintiffs', or a plaintiffs decedents', developing one or more forms of respiratory disease leading to severe health problems or death.[2] The defendants, including

---

[1]Two amici briefs have been filed. The first was "Brief Amici Curiae of Baron & Budd, P.C. and Provost Umphrey in Opposition to Garlock's Motion to Stay" purporting to represent the interests of "thousands of victims of asbestos-related disease with cases pending in the state courts of Texas and elsewhere" who could be adversely affected by a stay in Garlock's case. The second was "Memorandum of Amicus Curiae the Official Committee of Asbestos Claimants of Federal-Mogul Global, Inc., in Response to Garlock Inc.'s Motions for a Stay Pending Appeal," also arguing that a stay in asbestos litigation would adversely affect plaintiffs in other cases and is not warranted here as a matter of law.

[2]As of December 13, 2001, appellees asserted that they collectively numbered 82 individual plaintiffs and that the diseases involved in their various lawsuits included:
  7    Living plaintiffs with asbestos-related mesothelioma;
  18   Plaintiffs' decedents with asbestos-related mesothelioma;
  17   Living plaintiffs with asbestos-related lung cancer;
  26   Plaintiffs' decedents with asbestos-related lung cancer;
  4    Living plaintiffs with asbestos-related laryngeal or esophageal cancer;
  3    Plaintiffs' decedents with asbestos-related laryngeal or esophageal cancer;
  6    Living plaintiffs with asbestosis;
  1    Living plaintiff with asbestos-related pleural disease.
*See* Appellees' Additional Response to Appellant's Motion for Stay

Garlock, number from about 40 to over 60 in the various individual cases. Their commonality is to be, or to have been, in a business either producing or making use of asbestos.[3] In each of the instant cases, both Garlock and Gasket Holdings, Inc. ("Gasket Holdings"), a subsidiary of Federal-Mogul, Inc. ("Federal-Mogul"), were named as co-defendants, among the many others. All of the cases were originally filed under Texas state law in Texas state court without implicating federal jurisdiction.

In October 2001, Federal-Mogul filed for protection pursuant to reorganization under Chapter 11 of Title 11 of the United States Code, in bankruptcy. Federal-Mogul included each of its 156 affiliates and subsidiaries, including Gasket Holdings, in the Chapter 11 filing. All of the bankruptcy cases were filed in the United States Bankruptcy Court for the District of Delaware.

---

Pending Appeal (hereinafter, "Appellees' Additional Response") at 2. Motions in additional cases have been filed since these figures were compiled.

[3]The specifics of the claims in these cases are not in the record before us because we are considering only whether to place a stay on the various proceedings to permit a formal appeal and review of the individual records on appeal. There have been hundreds of thousands of asbestos-related lawsuits brought in Texas and throughout the country in the last three decades, however. A typical claim asserts that the numerous "named defendants either made, sold, marketed, brokered, imported, specified or used asbestos-containing products in Texas which were defective and unreasonably dangerous as designed, manufactured and marketed." *See, e.g., Broyles v. U.S. Gypsum Co.*, 266 B.R. 778, 780 (E.D. Tex. 2001). The claims then generally assert causes of action for "negligence, gross negligence, fraud, deceit, misrepresentation, battery and defective products theories under Texas state law." *Id.* at 780-81.

3

In mid October, Garlock began systematically removing asbestos cases in which Garlock and Gasket Holdings appeared as co-defendants. Garlock asserted that because the Federal-Mogul group, including Gasket Holdings, was in bankruptcy and because Garlock had made a claim for contribution under Texas state law[4] against Gasket Holdings, invoking federal jurisdiction was appropriate because the contribution claim was "related to" a claim under Title 11 in accordance with 28 U.S.C. § 1334(b). Garlock therefore proceeded with removal actions in several federal district courts throughout Texas. Besides the 37 cases now before us, Garlock removed about 40 similar cases in the federal districts of Texas.

In each of the 37 instant cases,[5] Garlock moved in the respective district court for the entire case to be transferred to the United States District Court for the District of Delaware under 28 U.S.C. § 157(b)(5). Such a transfer would permit that district court to determine the appropriate venue, either itself or the federal district court in which the respective action arose originally, in which to adjudicate the PITWD claims against the debtor and against Garlock as a non-debtor co-defendant who asserts

---

[4]*See* TEX. CIV. PRAC. & REM. CODE §§ 32.001-003, 33.001-004, 011-017.

[5]In Garlock's haste to remove cases to federal district court, it removed a case in which Garlock and the plaintiffs had already reached a settlement. That erroneously removed case, filed as *Smith v. Able Supply Co.*, Civil Action number G-01-673 in the United States District Court for the Southern District of Texas, Galveston Division, was included in Garlock's flurry of motions to stay under Fifth Circuit Case No. 01-41370. Garlock has since filed a notice of withdrawal of appeal in this one case.

4

a claim for contribution against the debtor.

The plaintiffs in every such removed case uniformly responded with a motion to dismiss debtor Federal-Mogul/Gasket Holdings (hereinafter, "debtor") as a defendant, a motion to sever any remaining claims against the debtor and a motion for the district court to exercise mandatory or discretionary abstention or to remand for lack of subject matter jurisdiction or for equitable reasons. The district judge in each case ruled for the plaintiffs and either dismissed the debtor as a defendant or remanded the remainder of the case to Texas state court or both. The 37 cases now under emergency motion for stay to this court originated in the Corpus Christi Division and Galveston Divisions of the Southern District, the Beaumont and Paris Divisions of the Eastern District, the Dallas Division of the Northern District, and the San Antonio and Austin Divisions of the Western District.

The district court in Corpus Christi dismissed the debtor *with prejudice*, severed all remaining claims against the debtor and transferred them under 28 U.S.C. § 157(b)(5) to the United States District Court for the District of Delaware, and remanded all remaining claims to Texas state court for lack of subject matter jurisdiction under 28 U.S.C. § 1447(c) and/or for equitable reasons under 28 U.S.C. § 1452(b). The district court made no ruling regarding either mandatory or discretionary abstention.

The district court in Dallas referred to the Corpus Christi

court's reasoning as "unassailable" and entered an order with identical results.

The district court in Galveston determined that bankruptcy subject matter jurisdiction under 28 U.S.C. § 1334(a) and (b) did not exist and that the case had been improperly removed under 28 U.S.C. § 1452(a). The court therefore remanded the entire case and all parties to Texas state court for lack of subject matter jurisdiction.

The district court which ruled in the Beaumont and Paris Division cases held that Garlock's claim for contribution was "scantily asserted" and unsupported, and even if real, was so tenuously related to the debtor's bankruptcy case as to be virtually immaterial. The court remanded for lack of subject matter jurisdiction under § 1447(c) and alternatively for equitable reasons under § 1452(b).

The district court in San Antonio cited the decisions of several other federal district courts, including the Corpus Christi district court, and determined that subject matter jurisdiction did not exist, remanded its cases on that basis alone and dismissed the plaintiffs' motions to sever as moot.

The district court in Austin severed all claims against the debtor and transferred them to the District of Delaware under § 157(b)(5) and remanded all other claims to the Texas state court.

Following each of the district courts' rulings, which occurred between November 9 and December 5, Garlock filed a notice of appeal

6

and moved in the respective district court for a stay of the court's order pending appeal. Some of the district courts issued a denial and some had not yet ruled on Garlock's stay motion; regardless, Garlock filed emergency motions to stay the respective district courts' orders under FED. R. APP. P. 8 before this court.[6]

Garlock asserts that it is not attempting to appeal an unappealable order of remand. Instead, Garlock states that it is appealing the "appealable" orders of the various district courts, including the inherent denials of Garlock's transfer motion under § 157(b)(5), any decision to abstain and any dismissal of the debtor. In so doing, Garlock claims that the "automatic stay" feature of 11 U.S.C. § 362, relating to cases in bankruptcy, not only stayed all actions against the debtor when it filed for bankruptcy, but that it stayed all related actions before the various district courts as well. Garlock further contends that the 10-day automatic stay of judgment under FED. R. CIV. P. 62 should have prevented the clerks of the district courts from certifying the remands back to state courts before Garlock could perfect its appeal. Some of the district clerks' offices mailed certified copies of the remand orders either before or after Garlock's notice

---

[6]Initially, Garlock filed documents titled "Petition for Writ of Mandamus to the United States District Court for the Southern District of Texas [Corpus Christi Division] and Petitioner's Emergency Motion for Stay Pursuant to Federal Rule of Appellate procedure 8(a)(1) Pending Appeal." In later actions, Garlock has simply filed an "Emergency Motion for Stay Pending Appeal" from one or another federal district court. We treat all of Garlock's motions as motions for stay.

7

of appeal; some have not yet certified the remand.

What Garlock seeks, essentially, is a procedural path that would invalidate the clerks' certification of remand and freeze further action in the district courts while permitting Garlock to perfect its appeal on the § 157(b)(5) transfer issue, without frontally challenging an unappealable remand order. On the basis of such a transfer, Garlock contends, it seeks a fair and consolidated proceeding for all parties.

The appellees bring a different view to this court. They contend that Garlock's true intent is simply to delay any proceeding against it for as long as possible. Such a dilatory intent, appellees contend, will have a devastating effect on them, some of whom are dying.

Appellees further contend that Garlock's dilatory intent is focused solely against these appellees because they have refused to enter into any standardized settlement plan or agreement such as those allegedly arranged between Garlock and other law firms engaged in asbestos litigation. It is true that Garlock has brought no other, similar case to this court on motions to stay or transfer except those in which the appellees' counsel appears for the plaintiffs. On that basis, counsel characterizes Garlock's interest not as an attempt to legitimately pursue a coordinated remedy under the bankruptcy law but as a cynical attempt to minimize its exposure with a law firm which "treats each case individually and attempts to achieve maximum value for its

8

clients." *See* Appellees' Additional Response at 3.

Because of the "emergency" nature of Garlock's motions, we implemented a temporary stay in each case to provide sufficient time to fairly consider whether a formal stay pending appeal should issue. We have determined that no such stay should issue and, by this order, dissolve the temporary stays.

Our decision in this case is predicated on two primary bases. First, that Garlock does not have a valid claim for contribution against Federal-Mogul or its associated business, Gasket Holdings, upon which to assert "related to" jurisdiction under the bankruptcy laws. Second, we find that Garlock has not otherwise met the elements necessary to obtain a discretionary stay pending appeal by this court. We will address each point raised in this complex matter.

## II. Jurisdiction, Stays, Transfer of Claims, and Effect of Remand.

We will examine the basis for federal bankruptcy jurisdiction and the framework of Garlock's contentions therein.

## A. Removal Authority and "Related To" Jurisdiction.

Authority to remove a case relating to a case under title 11 resides in 28 U.S.C. § 1452(a):

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim under section 1334 of this title.

9

Title 28 U.S.C. § 1334(a) provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11."

Certain matters related to the debtor's bankruptcy may be included within the ambit of federal bankruptcy jurisdiction under 28 U.S.C. § 1334, *et seq.* Specifically, "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *See id.* § 1334(b).

As the United States Supreme Court has noted, "related to" bankruptcy proceedings include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995). Garlock's asserted claim for contribution against the debtor falls into the second category.

Most of the federal circuits, including the Fifth Circuit, derive their "related to" jurisprudence from *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984). *See Celotex,* 514 U.S. at 308 n.6. In *Pacor*, the Third Circuit determined that a third-party controversy not directly involving a debtor in bankruptcy was not related to the bankruptcy, but was, at best, a precursor to a claim

10

against the debtor. *See Pacor,* 743 F.2d at 995. The Third Circuit so ruled on the basis that any judgment between the two third parties could not have any preclusive effect by either *res judicata* or collateral estoppel against the debtor, who would be free to relitigate any claim brought against it. *Id*. Thus, "related to" jurisdiction would not come into play until a litigant brought a direct claim under bankruptcy jurisdiction based on the result of the prior judgment.

Within the Fifth Circuit, the test for whether a proceeding properly invokes federal bankruptcy jurisdiction is the same as the Third Circuit's *Pacor* test, namely, whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Canion*, 196 F.3d 579, 585 (5th Cir. 1999). Certainty, or even likelihood of such an effect is not a requirement. *Id*. at 587 n.30 (citing *Copelin v. Sprico, Inc.*, 182 F.3d 174 (3rd Cir. 1999)).

In *In re Canion*, a judgment creditor of the debtor, Canion, brought a direct action against several family members, employees, friends and associates of the debtor, asserting claims of fraud and tortious interference with the judgment creditor's recovery of the judgment. *In re Canion*, 196 F.3d at 582. Our determination was that this circumstance fell within the "related to" bankruptcy jurisdiction at the time the case was referred to the bankruptcy court (which is the time at which jurisdiction is tested) because

11

the outcome of the proceedings against the defendants conceivably could have increased the debtor's estate. *Id*. at 587. Appellees argue that Garlock presents no such direct claim and that its claim for contribution, not based on a contractual relationship, is too tenuous to connect the underlying asbestos PITWD claims to the debtor.

**1. "Contribution" as a basis for "related to" jurisdiction and the automatic stay provision in bankruptcy.**

The Sixth Circuit has held that a claim for contribution is a sufficient basis for finding "related to" jurisdiction in bankruptcy and, in fact, is a sufficient ground upon which to direct a transfer of venue for related tort claims under 28 U.S.C. § 157(b)(5), the same relief sought by Garlock here. In *In re Dow Corning*, 86 F.3d 482 (6th Cir. 1996), where a relatively small number of non-debtor co-defendants were closely related to the pending breast implant litigation against debtor Dow Corning, a claim of contribution by the co-defendants against Dow Corning, even if only intended and not yet asserted, was sufficient to invoke "related to" bankruptcy jurisdiction.

In *In re Walker*, 51 F.3d 562 (5th Cir. 1995), a party held liable to a debtor for a violation of the automatic stay provided in 11 U.S.C. § 362 sought to invoke "related to" jurisdiction against a third party by asserting a claim of contribution under § 362. *Id.* at 565-66. We found no federal contribution right to be

12

invoked in § 362 and denied the appellant's claim. *Id.* at 567-68.

Here, Garlock has asserted its contribution rights entirely under

Texas state law. As we discuss in Part III, Garlock's contribution

claim is invalid and therefore no "related to" jurisdiction could

exist in this case.

**B.   Transfer of Personal Injury Tort and Wrongful Death Claims under 28 U.S.C. § 157(B)(5).**

Garlock seeks to transfer all of the PITWD claims in each of

the lawsuits against it in accordance with 28 U.S.C. § 157, which

empowers the district court where a bankruptcy is proceeding to

determine the venue for certain PITWD claims related to the

bankruptcy. Specifically,

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claims arose, as determined by the district court in which the bankruptcy case is pending.

*See* 28 U.S.C. § 157(b)(5). Use of this transfer provision in the

mass tort context is not strictly novel, but is to date uncommon.[7]

In the cases before us, the various district courts either

explicitly or implicitly denied Garlock's motions to transfer all

underlying PITWD claims from the districts in Texas to the District

of Delaware.

The Sixth Circuit has held that the denial of a motion to

---

[7]Section 157(b)(5) was the basis for transferring the PITWD claims in *A.H. Robins v. Piccinin*, 788 F.2d 994 (4th Cir. 1986) and *In re Dow Corning*, 86 F.3d 482 (6th Cir. 1996).

13

transfer under § 157(b)(5) is immediately appealable on different grounds including a less rigid view of the "finality" requirement for bankruptcy judgments and under the collateral order doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949).  *See In re Dow Corning*, 86 F.3d 482, 488 (6th Cir. 1996).  Because of our ultimate holding herein, we need not determine the same issue for this circuit.  Regardless, Garlock claims it should benefit from a stay of the district courts' orders to present an appeal.

**C.  Stays Applicable to Bankruptcy Proceedings.**

**1.  Title 11 U.S.C. § 362.**

Once a party files in bankruptcy, under Chapter 11, for example, 11 U.S.C. § 362, *et seq.*, stays further actions against the debtor.  Virtually any act attempting to enforce a judgment against or obtain property from the estate *of the debtor* is stayed once the title 11 proceedings are commenced.  *See id*. § 362(a)(1)-(8).  In the instant cases, Garlock contends that § 362 should stay any further actions against the non-debtor co-defendants and should stay the various district courts from dismissing debtor Federal-Mogul companies or remanding the related cases to state court.[8]

Section 362 is rarely, however, a valid basis on which to stay actions against non-debtors.  *See Wedgeworth v. Fibreboard Corp.*,

---

[8]Such a stay would enable Garlock to perfect an appeal of the district courts' explicit or inherent denials of Garlock's § 157(b)(5) transfer motion without having to contend with an order of remand.

14

706 F.3d 541, 544 (5th Cir. 1983)("[w]e join [the cited courts] in concluding that the protections of § 362 neither apply to co-defendants nor preclude severance").

By exception, a bankruptcy court may invoke § 362 to stay proceedings against nonbankrupt co-defendants where such identity between the debtor and the third-party defendant exists that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. *A.H. Robins Co.,* 788 F.2d 994, 999 (4th Cir. 1986). In that case, however, the non-debtor co-defendants were indemnified associates, employees or insureds of the debtor sole manufacturer of the Dalkon Shield intrauterine device. Here, Garlock is one of scores of different asbestos makers, users, importers, etc., with no interest to establish such an identity with debtor Federal-Mogul/Gasket Holdings. There is no claim of a formal tie or contractual indemnification to create such an identity of interests.

## 2. Federal Rule of Civil Procedure 62.

Garlock has also asserted that FED. R. CIV. P. 62(a) should have operated to effect a ten-day stay of the various district courts' orders before they were executed. In pertinent part, Rule 62(a) establishes that "no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry." Garlock's concern is that, lacking

15

the protection of the ten-day stay, the district clerks' offices were free to certify the various remand orders at any time and by doing so, potentially destroy federal jurisdiction without possibility of appellate review.[9]  Garlock contends that it is not seeking appellate review of an order to remand, but seeks a stay of the remand order in the district court under FED. R. CIV. P. 62(d) upon appeal of the § 157(b)(5) issue.

Rule 62(d) relates to Rule 62(a) in that Rule 62(a) provides a respite from the immediate execution of a judgment, except for an interlocutory or final judgment in an action for an injunction or in a receivership action, or for an accounting in an action for infringement of letters patent.  Rule 62(d) then provides for a stay pending appeal, subject to the exceptions in Rule 62(a).

The stay provisions of Rule 62 pertain to judgments for money. *Hebert v. Exxon Corp*, 953 F.2d 936, 938 (5th Cir. 1992).  That does not preclude diverse forms of judgment pertaining to monetary responsibility from a stay under Rule 62(d) pending appeal nor Rule 62(a) for ten-day automatic stay of judgment.  *See id*. at 938-39 (overturning a district court's denial of a stay of declaratory

---

[9]Garlock's references to FED. R. CIV. P. 62, *et seq.*, in the Petitioner's Motions for Stay are primarily aimed at an argument to establish an appeal as a matter of right.  Once Garlock discovered, however, that the federal district court in Corpus Christi had already mailed certified copies of the court's remand orders without waiting the ten-day period specified in Rule 62(a), it filed a series of "Emergency Motion[s] for Supplemental Relief" asking this court to direct the district clerk's office to, in effect, "de-certify" its certification.

16

judgment where the declaratory judgment was, in effect, a money judgment suitable for a Rule 62(d) stay subject to the requirements of Rule 62(a)).

In the instant cases, however, the subject matter of Garlock's motion is not for a stay of judgment, declaratory or otherwise. It is for a stay of remand under Rule 62. A remand of an ongoing case is not a final judgment following a full adjudication of a claim, the result of which may be appealed. Even if the subject matter of the underlying litigation is solely money damages, there is no "money judgment" inherent in its remand. Accordingly, there is no basis in Rule 62 for such a stay. *See City of New Orleans v. Nat'l Serv. Cleaning Corp.*, No. 96-1601, 1997 WL 5915, at *1 (E.D. La. Jan. 6, 1997).

Further, Rule 62 itself provides no authority to revoke a remand once it has become effective. *See, e.g., Rivera-Perez v. Mass. Gen. Hosp.*, 193 F.R.D. 43, 45 (D.P.R. 2000).

On that basis, Garlock is not entitled to the Rule 62 automatic stay.

## D. Effect of Remand.

We have consolidated many of these cases according to date or by court, but as indicated in Part I, the orders are not entirely uniform. All of them include a remand for lack of subject matter jurisdiction, citing 28 U.S.C. § 1447(c). However, two of the courts did not make such a finding until after the debtor had been

17

dismissed *with prejudice* from the plaintiffs' cases and the remaining cross-claims for contribution severed and transferred to the District of Delaware. Two others remanded for lack of subject matter jurisdiction without dismissing the debtor, without detailed explanation. One court did not dismiss the debtor but found Garlock's claims for contribution to be scanty and, if real, too tenuous and remanded. Some courts remanded on equitable grounds.

**1. Remand for lack of subject matter jurisdiction.**

A remand for lack of subject matter jurisdiction under 28 U.S.C. § 1447(c) is ordinarily barred from appellate review by 28 U.S.C. § 1447(d). *See State of Rio de Janeiro v. Philip Morris, Inc.*, 239 F.3d 714, 716 (5th Cir. 2001)(noting that as long as a district court's remand order is based on lack of subject matter jurisdiction, a court of appeals lacks authority to review a remand under § 1447(d); also referring to "the black hole force of a remand for want of jurisdiction"). There are few exceptions. Notably, remand under a district court's citation of § 1447(c) for a reason not embraced within that statute is subject to appellate review. *Id.* at 715 (citing *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336, 343 (1976)). That exception is inapplicable here.

Rather than fruitlessly attempting an appellate review of a district court's remand order, we instead examine the steps leading from a district judge's decision to remand to execution of the

18

remand order.

A § 1447(c) order of remand is not self-executing.  Section 1447(c) provides, in pertinent part, that upon determination that a case should be remanded, "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court.  The State court may thereupon proceed with such case." *See McClelland v. Gronwaldt*, 155 F.3d 507, 514 n.5 (5th Cir. 1998). This provision creates legal significance in the mailing of a certified copy of the remand order in terms of determining the time at which the district court is divested of jurisdiction.  *Id.* (citing the discussion and references in *Browning v. Navarro*, 743 F.2d 1069, 1078-79 (5th Cir. 1984)).  On that basis, the federal court is not divested of jurisdiction until the remand order, citing the proper basis under § 1443(c), is certified and mailed by the clerk of the district court.

Once the remand order is certified and mailed, however, the matter remanded is removed from federal jurisdiction. Of all the cases brought before us under Garlock's motions, most have already been certified and mailed by the respective district clerks.

**2.  Equitable remand.**

Of greater import in this particular case is the effect of an equitable remand.

> The court to which [claim or cause of action related to bankruptcy cases] is removed may remand such claim or cause of action on any equitable ground.  An order entered under this subsection remanding a claim or cause

19

> of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

*See* 28 U.S.C. § 1452(b). This remand statute, unlike § 1447(c), carries no certification and mailing requirement, nor have we found authority to require such, as much as that would promote procedural consistency with § 1447(c). Whether such an equitable remand is self-executing is less important than the stricture that, once a matter related to a bankruptcy case is equitably remanded, it is not subject to federal appellate review on any basis. *See Hawking v. Ford Motor Credit Co.*, 213 F.3d 540, 550 (5th Cir. 2000); *Sykes v. Texas Air Corp.*, 834 F.2d 488, 490 (5th Cir. 1987)(even an equitable remand based on a substantive law issue such as lack of subject matter jurisdiction is unreviewable, in part because of the likelihood of throwing matters into confusion months or years later after other proceedings, e.g., in state courts).

Garlock's emergency petition seeks to halt the progress of a remand before it leaves the district court for an immediate appeal of a collateral order. The determination of venue for PITWD cases such as these under 28 U.S.C. § 157(b)(5) would seem to be the type of matter which could be readily decided without creating the type of confusion following an order of remand with which we were concerned in *Sykes*. The equitable remand of bankruptcy-related matters harbors no such opportunity.

20

Because some of the various subject-matter jurisdiction remands have not yet been certified and mailed, and because some have not been remanded equitably, we will proceed with an analysis of whether Garlock should otherwise be granted a stay pending appeal under our authority in FED. R. APP. P. 8 in those matters not barred from further review.

## III. Merits of the Motion for Stay.

When presented with a motion for a discretionary stay pending appeal, we employ a four-part test. *See In re First S. Sav. Assoc.*, 820 F.2d 700, 704 (5th Cir. 1987)(citing *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)("*Ruiz II*")). While each part must be met, the appellant "need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Id*. (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981)("*Ruiz I*")).

## A. Whether the movant has made a showing of likelihood of success on the merits.

Despite the possible availability of a discretionary stay pending appeal, even if Garlock had avoided remand, it could not show a probability of success on appeal.

First, there was no 11 U.S.C. § 362 automatic stay of actions available to the non-debtor co-defendants of the debtor, Federal-

21

Mogul/Gasket Holdings.  Therefore, while § 362 acted to stay any claims against the Federal-Mogul entities, including Garlock's putative claim of contribution, it carried no force to stay actions as between the remaining co-defendants, the debtor and the various plaintiffs.  On that basis, the plaintiffs were free to dismiss Federal-Mogul and its associated entities under FED. R. CIV. P. 41(a)(1).  Even if Garlock had filed a counterclaim against the plaintiffs in each such case, which Garlock does not assert, the district court would have been within its discretion to dismiss by order of the court under Rule 41(a)(2).

For those cases in which the debtor was formally dismissed,[10] such dismissal was *with prejudice* and, under Texas law, eliminated Garlock's contribution claim against the debtor.  It is well established under Texas case law that neither contribution nor indemnification can be recovered from a party against whom the injured party has no cause of action.  *See Safway Scaffold Co. of Houston, Inc. v. Safway Steel Products, Inc.*, 570 S.W.2d 225, 228-29 (Tex. App.--Houston [1st Dist.] 1978, writ ref'd n.r.e.).  In modern Texas code, a "responsible third party" from whom contribution is sought must "be liable to the plaintiff for all or a part of the damages claimed against the named defendant or defendants."  *See* TEX. CIV. PRAC. & REM. CODE ANN. §

_____

[10]By our reckoning, this includes all of the cases ruled on by the district courts in Corpus Christi and Dallas.

33.011(6)(A)(iii)(Vernon 2001). Thus, no claim for contribution may lie in those cases wherein the district court dismissed the debtor *with prejudice*.

Second, the Texas code eliminates a debtor in bankruptcy as a "responsible third party" from whom contribution may be sought, except to the extent that liability insurance or other source of third party funding may be available to pay the claims asserted against that debtor. *Id*. § 33.011(6)(B)(ii). Garlock has addressed the issue of the debtor's insurance peripherally, but has not clearly represented whether the insured debtor is Federal-Mogul itself, Federal-Mogul's subsidiary Gasket Holdings (successor to Flexitallic, another gasket-producing company), or whether either or both of them have liability insurance available to pay any claims.

Third, Garlock has relied in part on two past decisions transferring PITWD claims under § 157(b)(5) to the district in which a debtor was proceeding in bankruptcy.

In *A.H. Robins*, the Fourth Circuit upheld an order of the United States District Court for the Eastern District of Virginia transferring, under § 157(b)(5), thousands of PITWD claims against a small number of non-debtor co-defendants to itself for coordinated review while the debtor, A.H. Robins Co., Inc., proceeded in bankruptcy in that district. *A.H. Robins*, 788 F.2d at

23

1016.[11]  Robins was the manufacturer of the Dalkon Shield intrauterine device, a unique product.  Its co-defendants were employees or other close associates who were contractually indemnified by Robins.  Here, the various co-defendants manufacture, use, specify, or handle many different asbestos products without such close relationship.  Additionally, Garlock makes no claim of indemnification here whatsoever.

In *In re Dow Corning*, the Sixth Circuit reversed and ordered the United States District Court for the Eastern District of Michigan to transfer under § 157(b)(5) a relatively small number of non-debtor co-defendants who had asserted claims for contribution, or announced the intent of doing so, against the debtor manufacturer of silicone breast implants.  *In re Dow Corning*, 86 F.3d at 498.  In that case, each of the co-defendants was closely involved in using the same material, originating with the debtor, to make the same, singular product, sold to the same market and incurring substantially similar injuries.  This circumstance created a unity of identity between the debtor and the co-defendants not present here, where the co-defendants variously use asbestos for brake friction products, insulation, gaskets, and other uses.

Therefore, while we do not disagree that certain mass tort

---

[11]The circuit court's ruling remanded for clarification and to provide notice for claimants' objections, but otherwise affirmed.

claims in some circumstances might be consolidated with bankruptcy proceedings in a single district in accordance with § 157(b)(5),[12] the relationship of the co-defendants in *A.H. Robins* and *In re Dow Corning* is distinguishable from Garlock's asserted relationship, through a claim for contribution, to the debtor here.

Fourth, Garlock's contribution claim against the debtor is based on universally-pled claims against all defendants in all asbestos lawsuits in which Garlock appears as a co-defendant. Garlock has never litigated a contribution claim to collection in any of approximately 250,000 previous asbestos lawsuits in which Garlock was a co-defendant. In the face of this criticism, Garlock has made a late attempt to color its failure to pursue an actual payment of contribution.[13] Garlock now asserts that in past lawsuits, the "larger" or "major" defendants, now in bankruptcy, had been present to pay their fair share of claims and that it was

_____

[12]Some writers and commentators would bar mass tort parties from being transferred for consolidated review under § 157(b)(5). *See, e.g.,* Lori J. Forlano, *Why Bankruptcy "Related To" Jurisdiction Should Not Reach Mass Tort Nondebtor Codefendants*, 73 N.Y.U. L. Rev. 1627 (1998)(arguing, generally, against consolidation on grounds of comity and federalism). We would not go so far as to bar such consolidation in the face of a coordinated federal bankruptcy scheme. Instead, we would balance each case individually, as we have herein, for the relationship or unity of identity of the co-defendants and the debtor(s), the uniformity of source of the injury or wrongful death, and the general status of pending cases in the state courts and the effect a consolidation would have on them.

[13]*See* Reply of Garlock, Inc., to Plaintiffs' Response, filed December 19, 2001, at 7-8.

not cost-effective for Garlock to litigate the relatively small amounts left in controversy. It is only since the Federal-Mogul entities proceeded to Chapter 11 protection that, Garlock contends, it must seriously proceed with its claims for contribution. Garlock has not, however, commenced discovery in any of these cases, but has spent its time seeking the § 157(b)(5) transfer addressed herein. The appellees characterize that as a dilatory intent and, if such, Garlock's actions are tantamount to being frivolous.

Additionally, the district judges ruling in the various cases before us found, on the facts before them, no merit in Garlock's claims. One district judge, for example, noted that in his court, Garlock's claims were "scantily asserted" and presented no facts to support them. As such, the contribution claims were "so tenuously related to the bankruptcy case" as to be "virtually immaterial." All of the district judges ultimately found no verifiable basis in Garlock's claims so as to justify a mass transfer to the District of Delaware.

We are not prepared to say that Garlock's motives were purely dilatory and its motions frivolous. We need not, however, decide the issue of motivation when determining the potential for success on the merits of Garlock's "related to" jurisdiction assertion and associated motion to transfer under § 157(b)(5). Given the preliminary analysis herein, Garlock would not succeed on the merits if granted a stay to appeal the § 157(b)(5) transfer issue.

Our determination in this element is sufficient to deny the stay pending appeal; however, we will briefly address the remaining points of analysis.

**B. Whether the movant has made a showing of irreparable injury if the stay is not granted.**

We have determined that Garlock has no valid claim for contribution against the debtor. Therefore, no irreparable harm will ensue if a stay is not granted.

**C. Whether the granting of the stay would substantially harm the other parties.**

There may be a danger of inconsistent results in the various state and federal courts in which Garlock and the other parties appear if these cases are not consolidated in the District of Delaware. That is, however, the circumstance under which asbestos litigation has proceeded for nearly 30 years.

What is certain is that delay where plaintiffs have mesothelioma, asbestosis, or pleural disease, or where decedents' survivors await compensation for support substantially harms those parties.

Additionally, delay in or lengthy interruption of state court proceedings already in progress for months or years may substantially harm the ability of the state courts to resolve the cases.

We therefore hold that, in this circumstance, the harm to the

27

plaintiffs in delay substantially outweighs the harm to Garlock if not delayed.

**D. Whether the granting of the stay would serve the public interest.**

Consolidation of PITWD cases related to a bankruptcy would facilitate management of an estate in bankruptcy and potentially provide an even-handed and fair apportionment of the bankrupt's estate to its creditors, including those claiming contribution in the mass tort scenario.

Such consolidation would also deprive states and state courts of their right to conduct proceedings brought under state law. In a mass tort case of the scope of asbestos litigation, transferring cases related to a bankruptcy could well result in depriving the states of cognizance over thousands of cases. Many of these cases are founded on well-developed state law and years of precedent and represent a significant amount of time in individual litigation. The negative effect on comity between the federal and state court systems must be given some account.

Armstrong Work Industries, U.S. Gypsum, W.R. Grace and Owens Corning are all proceeding through Chapter 11 in Delaware in addition to Federal-Mogul. The burden of these five asbestos-related bankruptcies and the direct claims against them alone has resulted in the Third Circuit appointing a district judge full-time to stewarding those cases in coordination with a bankruptcy judge.

The transfer of all of the PITWD claims against asbestos co-defendants to that court has the potential to overload the court with thousands of individual claims to resolve.  It is difficult to see how the public interest is served in that manner.

At the bottom, there is justification for aggregation, but the tenuous relationship between Garlock and the debtor and the insubstantial claims of contribution reflected herein do not justify ignoring comity and loading thousands of cases on a single district *in this case*.

## IV.  Issue Preclusion.

Garlock contends that a transfer of venue to the District of Delaware would obtain "a 'centralized,' 'efficient,' cost-effective application of a uniform, fair system for assessing and compensating asbestos-related claimants" under 28 U.S.C. § 157(b)(5) and the automatic stay feature of 11 U.S.C. § 362, "to avoid unnecessary repetition, confusion, inconsistent results in multiple trials of common issues, cost or delay where these many cases do not have to be multiplied."[14]  In addition to seeking a

---

[14]*See* Petitioner's Emergency Motion for Stay at 3 (for cases consolidated under Fifth Circuit Case No. 01-41327).  In cases filed at later dates and consolidated under other case numbers, Garlock's intent is stated in a different location.  For example, "[a] stay in this action will promote the stated congressional public policy reflected in § 157(b)(5) of having all matters 'related to' bankruptcy reviewed toward implementing centralized, efficient and expeditious proceedings conserving the debtor's resources and distributing the debtor's assets for the benefit of all creditors alike."  *See* Petitioner's Emergency Motion for Stay at 14 (for cases consolidated under Fifth Circuit Case No. 01-

centralized forum under federal bankruptcy laws, which, we note, Garlock may desire as much for perceived protection from judgments in the state courts, Garlock appears to be contemplating the availability of coordinated federal court judgments for their preclusive effect in future actions.

To the extent that Garlock's contention can be read to embrace one made more explicitly by the "Big Three" automobile manufacturers[15]--that transfer to the District of Delaware bankruptcy court would facilitate a ruling on the ability of friction products to be a producing cause of asbestos-related diseases, a ruling that would be used for purposes of issue preclusion in other cases--Garlock faces formidable obstacles. As an initial matter, we note that Garlock has not attempted to certify as a class these and other asbestos cases--the only widely-

---

51209). Regardless, all of the motions reflect the same underlying general facts, legal theory and intent.

[15]The "Big Three" automobile manufacturers, who are co-defendants in many of these same cases, are being sued as users of asbestos friction products, such as brakes in automobiles. They moved in the District of Delaware to transfer all such claims against them under § 157(b)(5) for the specifically stated intent of conducting *Daubert* hearings for the admission of scientific evidence and a ruling that brake/friction products are conclusively not a possible source of disease-producing asbestos. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Such a ruling would then be used for issue preclusion in future cases. Garlock and amici have briefed the auto manufacturers' effort from their opposing perspectives and counsel for Ford Motor Co., DaimlerChrysler Corp. and General Motors Corp. has further informed us by letter dated December 12, 2001, that the District of Delaware has provisionally transferred only those claims to that court for further determinations.

30

credited medium for disposing of multiple claims while barring relitigation of resolved issues. Less well-accepted is consolidation under Rule 42, but this approach is complicated by the cases involved having been filed in multiple courts in diffuse districts and by the absence of complete uniformity among parties and interests. Even more tenuous would be resort to judicial notice under FED. R. EVID. 201. For a party to tee up an issue for decision in a selected court with the expectation that any rulings would not only be referenced by subsequent courts but also applied as binding--and in the face of inconsistent decisions previously rendered elsewhere--is to hope for a most novel application of that rule indeed.

But no matter how creative the procedural avenue, and in spite of the fact that this litigation would benefit from a uniform approach, at almost every turn this circuit has rejected attempts at aggregation and issue preclusion in asbestos cases. Our adversity toward group resolution sounds in our concern that no one be deprived the right to a full and fair opportunity to litigate their claims. In *C.A. Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982), we turned aside a district court's order that nonparty asbestos companies were estopped from relitigating issues of dangerousness and causation as violative of the fundamental right to trial by jury. We reached this conclusion based on the manufacturers' each having an interest in the

31

plaintiffs proving the same set of facts.  Indeed, in *Hardy* we went so far as to conclude that the presence of inconsistent findings in other cases on the same questions at issue in *Hardy* made the application of collateral estoppel highly problematic even as to the parties themselves.  Of course Garlock need not be reminded of *Hardy*'s place in this circuit's jurisprudence for it was one of the defendants that opposed any attempt to bar the relitigation of key dispositive issues.

The passage of time has not weakened the teachings of *Hardy*. *In re Fibreboard*, 893 F.2d 706 (5th Cir. 1990), saw this court issue a writ of mandamus against the trial of a representative group of plaintiffs on the issues of duty and damages.  There, we said that adherence to state substantive law and to the Seventh Amendment right to trial by jury would not tolerate making the resolution of a handful of claims binding as to defendant asbestos manufacturers' liability with respect to all plaintiffs.  In *Cimino v. Raymark Industries, Inc.*, 151 F.3d 297 (5th Cir. 1998), we again revisited the same district court's revised effort at mass resolution.  There, we emphasized that federal rules providing for aggregation of claims--specifically, FED. R. CIV. P. 23 and 42-- cannot override the necessity of proving causation as to each defendant, a requirement of the state law providing the cause of action and of the right to trial by jury.  As we did in *Fibreboard*, we refused to tolerate deviation from fundamental principles of due

32

process simply because asbestos cases threatened to swamp the resources of the federal courts.

The closest this circuit has come to utilization of issue preclusion in the asbestos context is *Jenkins v. Raymark*, 831 F.2d 550 (5th Cir. 1987). In that case, a certified class of 753 claimants were permitted to try common issues in a single trial, the result of which was applicable to the class. The procedure approved in *Jenkins*, however, still required individual jury determinations of causation and damages.

The efficiencies to be obtained from issue preclusion, therefore, cannot in this circuit serve as a basis for the transfer of cases under 28 U.S.C. § 157(b)(5).

## V. Abstention.

A § 157(b)(5) motion ordinarily requires an abstention analysis. *In re Dow Corning*, 86 F.3d 482, 497 (6th Cir. 1996). 28 U.S.C. § 1334 provides for two types of abstention: discretionary abstention under § 1334(c)(1) and mandatory abstention under § 1334(c)(2). *See*, *e.g.*, *Broyles v. U.S. Gypsum Co.*, 266 B.R. 778 (E.D. Tex. 2001) (finding both doctrines apply, as well as equitable remand, in circumstances *not* involving a transfer under 28 U.S.C. § 157(b)(5)).

We agree with the district judge in Corpus Christi. Any abstention issues remaining in these cases regarding claims now before the bankruptcy court in the District of Delaware may be

33

decided by that district court.

## VI. Conclusion.

We do not disagree that the transfer provisions of 28 U.S.C. § 157(b)(5) may be applicable to multiple, non-debtor co-defendants in a mass tort case. Our holding today is that Garlock, in these cases and under these circumstances, has not shown that such a transfer is appropriate.

It is hereby ORDERED that,

The Petitioner's Motions for Stay under FED. R. APP. P. 8 are DENIED. It is further ORDERED that,

The temporary stays issued in our consolidated Orders are hereby dissolved.